UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

TRACY CHANG and HOWARD HSU,

    Defendants.

Case No.: 3:15-cr-00067-WHO

## <u>DEFENDANTS TRACY CHANG'S AND HOWARD HSU'S TRIAL BRIEF</u>

COME NOW, Defendants Tracy Chang and Howard Hsu, mother and son, through the undersigned attorneys of record Robert E. Barnes and Joseph C. Longo, and file this trial brief.

The Constitution guarantees the right to be tried only on felony charges found by a grand jury and issued in an indictment; the right to counsel in preparation and presentation of one's case; the right to aid of the court's compulsory process; the right to cross-examine one's accusers; the right to testify on one's own behalf or remain silent; the right to call witnesses one one's behalf; and the right to a trial of all facts by an indifferent and impartial jury. *See* Constitution; *see also Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).

I.        **STATUS OF THE CASE**

    A.  <u>Pending Motions</u>: The prosecution has four motions *in limine* pending.

    B.  <u>Trial Date</u>: Voir dire and the start of trial is scheduled to commence February 6, 2017.

    C.  <u>Length of Trial</u>: The defense estimates the prosecution's case will take one week (5 business days) and the defense's case will take one week (5 business days), for a total length of trial of two weeks (10 business days).

## II.                STATEMENT OF THE CASE

A.  Indictment

The prosecution alleges six charges: in the first count, against all defendants, a *Klein* conspiracy to defraud the government through obstruction of the lawful functions of the IRS by dishonest and deceitful means; in the second and third counts, against defendant Tracy Chang, the indictment charges making and subscribing a false tax return on behalf of Didsee Corporation for 2008 and 2007, respectively, in violation of Section 7206(1) of Title 26 of the United States Code[1]; in the fourth, fifth, and sixth counts, against defendant Howard Hsu, the indictment charges aiding and assisting in the preparation of false tax returns for Didsee Corporation for 2008, 2009, and 2007, respectively, in violation of Section 7206(2) of Title 26 of the United States Code. According to the indictment, the illicit purpose of the conspiracy was to impede, impair, obstruct, and defeat the lawful function of the IRS into improperly performing its tax functions concerning the taxes due and owing from Didsee Corporation, owned by defendant Howard Hsu with defendant Tracy Chang signing the corporation's tax returns. The indictment's alleged affirmative acts in furtherance of misleading the IRS into not performing their assessment or collection function are the same as the dishonest and deceitful means for the conspiracy alleged. The alleged overt acts and dishonest means of the *Klein* conspiracy and the alleged affirmative acts intended to mislead the IRS, according to the indictment, are: defendant Howard Hsu directed defendant Tracy Chang by e-mail to sign a Form 8879-C, IRS F-File Signature Authorization, for Didsee's 2008 Form 1120 and to provide it to Didsee's tax return preparer; defendant Howard Hsu directed defendant Tracy Chang to pay for Mr. Hsu's personal expenses from Didsee's bank accounts; defendant Howard Hsu provided false and fraudulent summaries and information to Didsee's CPA for the 2008 tax year; defendant Tracy Chang signed Didsee's 2008 Form 1120; defendant Howard Hsu provided false and fraudulent summaries and information to Didsee's CPA for the 2009 tax year; defendant Tracy Chang signed Didsee's 2007 Form 1120X; and defendant Howard Hsu did not report as income on his 2007 through 2009 personal tax returns the personal expenses that Didsee paid on his behalf and

---

[1] The government filed a Motion to Dismiss Count 3, against defendant Tracy Chang, regarding Didsee's 2007 Form 1120 on January 12, 2017.

Case No. 3:15-00067-WHO
Defendants' Trial Brief

1    at his direction.

2           The critical issues at trial, given the stipulations of the defense, are two-fold: first, whether

3    defendants Howard Hsu or Tracy Chang intended to defraud the IRS through deception and

4    affirmatively misled the IRS about the business deductions of Didsee by misstating that information

5    on Didsee's federal tax returns; and secondly, whether defendants Howard Hsu or Tracy Chang

6    believed in good faith he or she was not breaking the law.

7           B.   Elements of the Offenses

8                i.   _Klein_ Conspiracy: Willfulness, Open Defiance & Good Faith

9           A conspiracy to defraud requires the government must prove the existence of an agreement

10   to accomplish an illegal objective, an overt act in furtherance of the illegal objective, and the intent

11   to defraud the United States. *See United States v. Bishop*, 291 F.3d 1100, 1106 (9th Cir. 2002); *see*

12   *also United States v. Ladum*, 141 F.3d 1328, 1343 (9th Cir. 1998). The intent to defraud is critical.

13   "There must, however, be an agreement to obstruct by deceit, craft or trickery, or at least by means

14   that are dishonest." *United States v. Caldwell*, 989 F.2d 1056, 1058–59 (9th Cir. 1993). This has

15   been the law for more than eight decades. *See Hammerschmidt v. United States*, 265 U.S. 182, 184

16   (1924) (conspiracy to defraud requires an agreement to obstruct by deceit, craft, or trickery, or at

17   least means that are dishonest). Good faith, regardless of the source of that belief is a complete

18   defense to the intent to defraud charges. *See United States v. Faust*, 850 F.2d 575, 582 (9th Cir.

19   1988) ("good faith, in general, constitutes a complete defense to any crime which requires

20   fraudulent intent").

21          Few crimes are viewed with more suspicion for misuse and abuse by the executive

22   department than conspiracy charges, especially conspiracies to fraudulently obstruct governmental

23   functions, due to their inherent propensity for treating permissible dissent as "fraudulent

24   obstruction."

25          "Attempts by prosecutors 'to broaden the already pervasive and wide-sweeping nets of

26   conspiracy prosecutions' are viewed 'with disfavor.'" *United States v. Licciardi*, 30 F.3d 1127, 1131

27   (9th Cir. 1994) (quoting Grunewald v. United States, 353 U.S. 391, 404 (1959).

28          Long ago Learned Hand referred to the general conspiracy statute as the "darling

- 3 -

of the modern prosecutor's nursery." *Harrison v. United States*, 7 F.2d 259, 263 (2d Cir. 1925)….It is instructive that *Pettibone* in 1893, *Hammerschmidt* in 1924 and *Tanner* in 1989 are all instances where the Supreme Court rebuffed a prosecutor's imaginative and unjustified expansion of the statute. We have only recently had to do the same. *United States v. Caldwell*, 989 F.2d 1056, 1058–1059 (9th Cir. 1993).

*United States v. Licciardi*, *supra*, 30 F.3d at 1133.

Mere open defiance is never sufficient, and convictions on that basis will not stand:

Its construction [the conspiracy to defraud crime]…cannot be used as authority to include within the legal definition of a conspiracy to defraud the United States a mere open defiance of the governmental purpose to enforce a law by urging persons subject to it to disobey it.

*Hammerschmidt*, *supra*, 265 U.S. at 189.

The Ninth Circuit emphasized the same principle again and again:

The Supreme Court has made it clear that "defraud" is limited only to wrongs done "by deceit, craft or trickery, or at least by means that are dishonest. **Obstructing government functions in other ways-for example, by violence, robbery or advocacy of illegal action-can't constitute "defrauding."** …. The federal government does lots of things, more and more every year, and many things private parties do can get in the government's way. It can't be that each such action is automatically a felony…. But we're unwilling to conclude Congress meant to make it a federal crime to do *anything,* even that which is otherwise permitted, with the goal of making the government's job more difficult.

*Caldwell,* 989 F.2d at 1059 (emphasis added).

Hence, not disclosing something that one has no independent legal duty to disclose cannot be a conspiracy to defraud even where it impedes the IRS. *See United States v. Murphy*, 809 F.2d 1427, 1431–32 (9th Cir. 1987).

The First Amendment imposes further limits.

Nothing in the record indicates that the advocacy practiced by these defendants contemplated *imminent* lawless action. Not even national security can justify criminalizing speech unless it fits within this narrow category; certainly concern with protecting the public fisc, however laudable, can justify no more…. Prosecution for advocacy of a tax shelter program in the absence of any evidence of a specific intent to violate the law is offensive to the first and fifth amendments of the United States Constitution.

*United States v. Dahlstrom*, 713 F.2d 1423, 1428-1429 (9th Cir. 1983).

To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft, trickery, or at least by means that

- 4 -

are dishonest. It is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention. It is true that the words "to defraud" as used in some statutes have been given a wide meaning, wider than their ordinary scope . . . Its construction in the *Horman* case cannot be used as authority to include within the legal definition of a conspiracy to defraud the United States **a mere open defiance of the governmental purpose to enforce a law by urging persons subject to it to disobey it.**

*Hammerschmidt v. United States*, 265 U.S. 182, 188-189 (1924).

"Mere failure to disclose income would not be sufficient to show the crime charged of defrauding the United States under 18 U.S.C. §371." *United States v. Klein*, 247 F.2d 908, 916 (2nd Cir. 1957) (direct interference with the performance of the functions of this agency, including the submission of false statements and affidavits to Treasury agents). Following *Klein*, this Circuit has likewise agreed that the mere failure to disclose income never rises to the level of a conspiracy to defraud or tax evasion. *See United States v. Voorhies*, 658 F.2d 710, 715 (9th Cir. 1981). In *United States v. Varbel*, 780 F.2d 758 (9th Cir. 1986), the defendants were charged with conspiracy to violate the currency transaction reporting laws which mandate the reporting of cash transactions exceeding $10,000. These defendants structured their cash transactions below the threshold amount, and were indicted for conspiracy to defraud by evading those reports. In reversing the convictions, the Court held:

> Since appellants were under no duty to report their currency transactions to or through the bank, there can be no concealment . . . Since the appellants have not illegally concealed matter within the jurisdiction of the IRS, the wire transfer of funds . . . could not have furthered a scheme to defraud the IRS.

*Id.* at 762.

On the strength of the decision in *Varbel*, other similar conspiracies were dismissed. *See United States v. Dela Espriella*, 781 F.2d 1432 (9th Cir. 1986); *see also United States v. Murphy*, 809 F.2d 1427 (9th Cir. 1987).

> *Hammerschmidt* also suggests that, even if a conspiracy to violate a specific federal law may be prosecuted under the 'commit any offense' clause of section 371, a criminal prosecution under the 'conspiracy to defraud' clause requires a **showing of more than completely external interference with the working of a governmental program or disregard for federal laws.**

- 5 -

*United States v. Haga*, 821 F.2d 1036, 1040 (5th Cir. 1987).

> Post-*Hammerschmidt* cases based on section 371 "conspiracy to defraud" indictments involving intangible governmental rights ordinarily have described clear interference and active contact with governmental agency functions.

*Id.*

> While it is not altogether clear whether a "conspiracy to defraud" indictment must specifically allege that the conspiracy had as its object interfering with a particular, specific governmental function, it nevertheless seems plain that, for a section 371 "conspiracy to defraud" conviction to stand, the essence of the conspiracy must at least involve a showing of more than **inadvertent contact with a governmental agency or incidental infringement of government regulations.**

*Id.* at 1041.

Equally, the misuse of obstruction offenses interfering with governmental functions, be it grand jury inquiries, SEC inquiries, or IRS actions, have met with equal concern. *See United States v. Aguilar*, 515 U.S. 593 (1995); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005); *United States v. Kassouf*, 144 F.3d 952 (6th Cir. 1998).

The Ninth Circuit held that even if the "means were dishonest" and the actions "had the effect of interfering with the IRS," the crime has not been committed without the requisite nexus of intent to defraud and intent to use the deceitful means to defraud. *United States v. Licciardi, supra*, 30 F.3d at 1132.

Similarly, the intent nexus is critical. The conspiracy is not a crime unless it has the "purpose and effect to defeat a lawful function of the government and injure others thereby." *Hammerschmidt, supra*, 265 U.S. at 187. The intended effect has been further defined in analogous obstruction contexts as something that has the "natural and probable effect of interfering" with the governmental function at issue, though it does not have to be successful in the endeavor. *United States v. Aguilar*, 515 U.S. 593, 601 (1995). A defendant who "lacks the knowledge that his actions are likely to affect" the governmental function at issue "lacks the requisite intent to obstruct." *Id.* at 599. As the Ninth Circuit concluded, "a person whose conspiratorial acts have the effect of defrauding the government escapes 371 liability unless he knew that his acts would have the effect of defrauding the government." *Licciardi, supra*, 30 F.3d at 1136 (Fletcher, J. concurring). This means rea requirement and careful nexus is necessary to protect First Amendment free speech   and

- 6 -

Fifth Amendment due process rights. *See United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir. 1983) (prosecution for advocacy of foreign entity use in the absence of a specific intent to violate the law is offensive to the First and Fifth Amendments of the United States Constitution); *see also United States v. Little*, 753 F.2d 1420, 1443 (9th Cir. 1984) ("the mens rea requirements eliminates any objection that the statute punishes the accused for an offense of which he or she was unaware") (noting *Whitman v. Fox*, 236 S.E.2d 565 (W.Va. 1977) (finding comparable state analog statute unconstitutional).

As the Ninth Circuit identified in *Caldwell*, not disclosing something one has no independent duty to disclose cannot be conspiracy to defraud even when it impedes the IRS. *United States v. Caldwell*, 989 F.2d 1056, 1059 (9th Cir. 1993); *see also United States v. Varbel*, 780 F.2d 758 (9th Cir. 1986). The failure to volunteer information is not sufficient. *See United States v. Tuohey*, 867 F.2d 534 (9th Cir. 1989). Conviction for conspiring to defraud must be "premised on activities separate from and distinct from those sufficient to support misdemeanor punishment." *United States v. Segal*, 852 F.2d 1152, 1157 (9th Cir. 1988) (internal citations and quotations omitted). Hiding the source and amount of money is not sufficient if the hiding is not intended to impede collection or assessment of tax. *See United States v. Krasovich*, 819 F.2d 253, 255–56 (9th Cir. 1987). Someone who does "no more than talk" cannot be conspiracy to defraud or it would not "withstand First Amendment's protection of speech." *United States v. Russell*, 804 F.2d 571, 757 (9th Cir. 1986) (Ferguson, J., concurring).

        ii.    <u>False Income Tax Returns</u>

          a.    <u>*Spies* & *Cheek*: Discouraging Debt or Dissent as a Felony Tax Crime.</u>

The twin pillars of criminal tax jurisprudence are *Spies* and *Cheek*, book-marking a half-century of American criminal tax law. *See Spies v. United States*, 317 U.S. 492 (1943); *see also Cheek v. United States*, 498 U.S. 192 (1991) (following *United States v. Murdock*, 290 U.S. 389 (1933). Two recent Supreme Court cases further inform the understanding of all felony evasion/corruption/obstruction laws designed to protect governmental functions from external corruption, evasion or obstruction. *See United States v. Aguilar*, 515 U.S. 593 (1995); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005).

As the court explained in *Spies*, it was our traditional abhorrence of imprisonment for debt that required an affirmative fraud element to felony evasion prosecutions, *Spies*, *supra*, 317 U.S. at 498, just as the Court in *Murdock* and *Cheek* carved out a special good faith misunderstanding of the law into the willfulness definition of criminal tax statutes in recognition of the important history of our dissent on the meaning of tax laws, *United States v. Murdock*, *supra*, 290 U.S. at 395–96; *Cheek*, *supra*, 498 U.S. at 203.

*Aguilar* and *Arthur Andersen* extended these principles to require an intended nexus between the affirmative act and the particular governmental function intended to be obstructed. *United States v. Aguilar*, *supra*, 515 U.S. at 600; *Arthur Andersen*, *supra*, 544 U.S. at 707–08. A defendant's affirmative act must not only be able to obstruct the Secretary of the Treasury's assessment of tax, but the defendant must intend the affirmative act to obstruct the Secretary of the Treasury's assessment of tax. This intended nexus is essential.

Cognizant of the potential misuse of criminal prosecutions in the tax arena, Congress and the Court prohibit criminal penalties for either debt or honest dissent. As the Supreme Court articulated, "our traditional aversion to imprisonment for debt" required "some element of evil motive" to prove tax evasion. *Spies*, *supra*, 317 U.S. at 498. Equally, criminal tax laws do not exist to punish "frank difference of opinion" about tax laws. *Cheek*, *supra*, 498 U.S. at 205 (quoting *Spies*). A "misunderstanding as to his liability for the tax" does not make a man a criminal "by his mere failure to measure up to the prescribed standard of conduct." *United States v. Murdock*, *supra*, 290 U.S. 389. Even an honestly absurd understanding of the tax laws requires acquittal. *See Cheek*, *supra*, 498 U.S. at 203–04.

America's unique political history concerning the legality of taxes informs these constraints Congress and the Court imposed on criminalizing tax conduct. With a nation born out of religious, political and tax heresy, cradled here in the northeastern states, imprisonment for "frank difference of opinion" with the government about the meaning of the tax laws was disfavored by Congress and the Court. *Cheek*, *supra*, 498 U.S. at 205 (quoting *Spies*). Similarly, a country founded by indentured servants and indebted colonists was not going to use imprisonment as a means of collecting a civil debt, even a debt to the state.

- 8 -

The refusal or willful omission to act, like the willful failure to file a return, is not an affirmative act of evasion. *See id*. An affirmative act is one with an evil or fraudulent intent. *See United States v. Bishop*, 412 U.S. 346, 352 (1973). The government must prove beyond a reasonable doubt the defendant was aware that his affirmative act had the natural and probable effect of preventing the IRS from assessing and collecting a tax. *See United States v. Aguilar*, *supra*, 515 U.S. 593; *see also Arthur Andersen*, *supra*, 544 U.S. 696.

These twin requirements—affirmative acts of a motive to mislead and a knowing violation of the tax law—protects against imprisonment for debt or imprisonment for honest dissent. To give effect to this carefully constructed "structure of sanctions," conduct Congress labeled a misdemeanor could not be the basis to charge a felony instead. *See Spies*, *supra*, 317 U.S. at 495.

A comparable concern—of misapplication of criminal statutes that could be so broad they run afoul of vagueness grounds—informed the Court's limiting constructions on corruption/evasion/obstruction felony crime statutes. *See United States v. Aguilar*, *supra*, 515 U.S. 593; *see also Arthur Andersen*, *supra*, 544 U.S. 696.

Prior to *Aguilar* and *Arthur Andersen*, courts often assumed no nexus was required between the affirmative act and the governmental function evaded, obstructed or corrupted. *Aguilar* and *Arthur Andersen* rejected those assumptions.

In *Aguilar*, a federal district court judge lied to federal officers conducting a grand jury inquiry, *see United States v. Aguilar*, *supra*, 515 U.S. 593; in *Arthur Andersen*, an accounting firm shredded documents on the eve of an SEC inquiry, *see Arthur Andersen*, *supra*, 544 U.S. 696. The government's theory was the same in both cases. The government alleged in *Aguilar* that they only needed to prove two things: first, that *Aguilar* committed an affirmative act (lying to federal officers); and secondly, this lie took place during a grand jury inquiry. *United States v. Aguilar*, *supra*, 515 U.S. at 600. The government followed the same theory in *Arthur Andersen*. *Arthur Anderson*, *supra*, 544 U.S. at 707. The government alleged in *Arthur Andersen* the accounting firm shredded documents and doing so could obstruct an SEC inquiry. *Id*. at 708. In both cases, the defendant argued that a mere fraudulent act which obstructed a governmental function could not constitute the crime without an intended nexus by the defendant that the affirmative act corrupt or

evade or impede the governmental function at issue. *Arthur Anderson*, *supra*, 544 U.S. at 707, n.10; *United States v. Aguilar*, *supra*, 515 U.S. at 600.

The Supreme Court rejected the government's theory, agreed with the defendants and reversed both convictions in *Aguilar* and *Andersen*. Committing a fraudulent act with the intent to interfere with the government inquiry is not sufficient; the act itself must have an intended nexus to the governmental function at issue.

As a unanimous Supreme Court reiterated just recently in *Arthur Andersen*, reversing both the district court and appellate court below:

> The instructions also were infirm for another reason. They led the jury to believe that it did not have to find *any* nexus between the "persua[sion]" to destroy documents and any particular proceeding . . . . We faced a similar situation in *Aguilar, supra.* Respondent Aguilar lied to a Federal Bureau of Investigation agent in the course of an investigation and was convicted of " 'corruptly endeavor[ing] to influence, obstruct, and impede [a] . . . grand jury investigation' " under §1503. All the Government had shown was that Aguilar had uttered false statements to an investigating agent "who might or might not testify before a grand jury." We held that §1503 required something more--specifically, a "nexus" between the obstructive act and the proceeding. If the defendant lacks knowledge that his actions are likely to affect the judicial proceeding," we explained, "he lacks the requisite intent to obstruct." For these reasons, the jury instructions here were flawed in important respects.

*Arthur Andersen*, 544 U.S. at 707 (internal citations omitted)

Both *Arthur Andersen* and *Aguilar* dealt with the same issues as *Murdock* and *Spies*: knowingly and corruptly influencing a governmental activity, with knowingly defined like willfully and corruptly influencing or corruptly endeavoring defined very much like evasion.

Making or subscribing a false tax return, or aiding or assisting that act, false squarely within the structure of criminal obstruction statutes: protecting a governmental function from affirmative acts of fraud intended to corrupt the government's ability to perform *that* function. Section 7206, as exemplified by the Supreme Court cases above, is subject to potential misuse of criminal prosecutions. The Supreme Court not only emphasized the requirement of consciousness of wrong doing, but also the required consciousness of a nexus between the act and the governmental activity attempted to be interfered with. Hence, an affirmative act intended to obstruct the assessment and collection of tax must include that the person is conscious their affirmative acts could prevent the Secretary from performing that function.

1

*b.*   Making and Subscribing a False Tax Return

2

Congress, by enacting 26 U.S.C. Sections 7206(1) and 7206(2) to address the crime of filing

3

a false tax return, chose to distinguish between the crime to be applied to the "perpetrator" and the

4

crime to be applied to anyone else who may have helped the perpetrator.

5

Section 7206 provides, in relevant part:

6

Any person who—

7

(1) Declaration under penalties of perjury—Willfully makes and subscribes any
return, statement, or other document, which contains or is verified by a written
declaration that it is made under the penalties of perjury, and which he does not
believe to be true and correct as to every material matter . . .

8

9

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than
$100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3
years, or both, together with the costs of prosecution.

10

11

26 U.S.C. § 7206.

12

It follows that:

13

To prove a violation of § 7206(1), making false statements, the government must
prove that the defendant (1) filed a return, statement, or other document that was
false as to a material matter; (2) signed the return, statement or other document
under penalty of perjury; (3) did not believe the return, statement or other document
was true as to every material matter; and (4) willfully subscribed to the false return
with the specific intent to violate the law.

14

15

16

17

*United States v. Hanson*, 2 F.3d 942, 945 (9th Cir. 1993) (overruled on other grounds) (citing *United*

18

*States v. Bishop*, *supra*, 412 U.S. at 350), followed in relevant part by *United States v. Boitano*, 796

19

F.3d 1160, 1164 (9th Cir. 2015).

20

Regarding the individual elements, a declaration is "false" if it was untrue when made and

21

was known to be untrue by the person making it at the time it was made. *United States v. Morris*,

22

20 F.3d 1111, 1115 (11th Cir. 1994) (citing 26 U.S.C. § 7206(1)). A matter is material if it had a

23

natural tendency to influence, or was capable of influencing, the decisions or activities of the

24

Internal Revenue Service, as distinguished from a minor or insignificant or trivial detail. *See* Ninth

25

Circuit Model Criminal Jury Instructions 9.42. To file a tax return requires personally delivering it

26

to the Internal Revenue Service, via mail or another means. *United States v. Boitano*, *supra*, 796

27

F.3d at 1164.

28

Finally, violation of Section 7206(1) "is a specific intent crime that requires

- 11 -

willfulness on the part of the individual who files a false tax return." *United States v. Morris*, *supra*, 20 F.3d at 1113–14. "The standard for the statutory willfulness requirement is the 'voluntary, intentional violation of a known legal duty.'" *Id.* at 1114 (quoting *Cheek*, *supra*, 498 U.S. 192). This "requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek*, *supra*, 498 U.S. at 201. "[T]he term "willful" in 26 U.S.C. § 7206(1) requires proof of specific intent to do something that the law forbids; more than a showing of careless disregard for the truth is required." *United States v. Loney*, 719 F.2d 1435, 1436 (9th Cir. 1983) (citing *United States v. Brooksby*, 668 F.2d 1102, 1104 (9th Cir. 1982)); *see also United States v. Dahlstrom*, 713 F.2d 1423, 1428 (9th Cir. 1983) ["'[D]egrees of negligence only give rise in the tax system to civil penalties'"] (quoting *United States v. Bishop*, 412 U.S. 346, 360). Furthermore, "[s]uch specific intent may be negated by a good-faith misunderstanding of the law or a good-faith belief that one is not violating the law, regardless of *whether or not the belief is reasonable*." *United States v. Morris*, *supra*, 20 F.3d at 1115 (emphasis added) (citing *Cheek*, *supra*, 498 U.S. at 202).

Therefore, to convict defendant Tracy Chang under Section 7206(1) the government must prove beyond a reasonable doubt that: (1) Tracy Chang filed a false tax return; (2) Tracy Chang signed the return under penalty of perjury; (3) Tracy Chang did not believe the return was true as to every material matter; (4) Tracy Chang willfully subscribed to the false return; and (5) Tracy Chang did not hold a good faith belief she was complying with the provisions of the Internal Revenue Code relating to her understanding of Didsee Corporation's liability for the income tax, even if the belief is unreasonable. *See Cheek*, *supra*, 498 U.S. at 199–201; *United States v. George*, 420 F.3d 991, 999 (9th Cir. 2005) ["The government cannot [establish the element of willfulness] without negating the defendant's claim that he was ignorant of the law, that he misunderstood the law, or that he held a good-faith belief his conduct did not violate the law."]. A defendant who acts on a good faith misunderstanding as to the requirements of the law does not act willfully even if his or her understanding of the law is wrong or unreasonable. *United States v. George*, *supra*, 420 F.3d at 999 ["Good faith reliance on a qualified tax accountant is a defense to willfulness."]. This is a subjective question: what Tracy Chang honestly believed, not whether she should have believed it. If the

evidence shows that any making or subscribing was merely negligent, then no conviction can lie against the defendant.

### c.   Aiding and Assisting the Preparation of a False Tax Return

Section 7206 provides, in relevant part:

> Any person who. . .
> (2) Aid or assistance—Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document . . .
> shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

It follows that the elements of a Section 7206(2) violation are: "(1) the defendant aided, assisted, or otherwise caused the preparation and presentation of a return; (2) that the return was fraudulent or false as to a material matter; and (3) the act of the defendant was willful." *United States v. Salerno*, 902 F.2d 1429, 1432 (9th Cir. 1990); *see* Brian Wohlberg et. al., Tax Violations, 52 Am. Crim. L. Rev. 1659 (2015). Regarding falsity, "a false statement is material if it is essential to the accurate computation of taxes or causes the return to be inaccurate." Brian Wohlberg et. al., Tax Violations, 52 Am. Crim. L. Rev. 1659 (2015). Furthermore:

> Willfulness, as construed by our prior decisions in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty. In the end, the issue is whether, based on all the evidence, the Government has proved that the defendant was aware of the duty at issue, which cannot be true if the jury credits a good-faith misunderstanding and belief submission, whether or not the claimed belief or misunderstanding is objectively reasonable.

*Cheek*, *supra*, 498 U.S. at 201–202.

Similar to Section 7206(1), "[t]he Supreme Court has repeatedly held that in order to make out a "willful violation" of section 7206(2) the government must prove defendants acted with specific intent to defraud the government in the enforcement of its tax laws." *United States v. Salerno*, *supra*, 902 F.2d at 1432 (citing *United States v. Bishop*, *supra*, 412 U.S. at 361; *United States v. Krasovich*, 819 F.2d 253, 256 (9th Cir. 1987) ["conviction reversed because '[n]othing in

- 13 -

the circumstances of the transaction suggests that Krasovich knew that the purpose of the concealment was to evade taxes.'").

> For example, United States v. Crum, 529 F.2d 1380 (9th Cir.1976), involved the defendant's participation in an illegal tax shelter scheme. The conviction for violation of section 7206(2) was upheld because the evidence indicated that the defendant knew about the scheme, and its purposes, and that they helped prepare the false information that was sent to the IRS.

*United States v. Salerno*, *supra*, 902 F.2d at 1433.

In other words, this means that the defendant must *know* that, in so assisting or aiding in the preparation of the return, the return would be false:

> This longstanding interpretation of the purpose of the recurring word 'willfully' promotes coherence in the group of tax crimes. In our complex tax system, uncertainty often arises even among taxpayers who earnestly wish to follow the law. The Court has said, 'It is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care.' *Spies*, 317 U.S., at 496, 63 S. Ct. at 367. . . . The Court's consistent interpretation of the word 'willfully' to require an element of mens rea implements the pervasive intent of Congress to construct penalties that separate the purposeful tax violator from the well-meaning, but easily confused, mass of taxpayers.

*United States v. Bishop*, *supra*, 412 U.S. at 359–361; *see also United States v. Salerno*, 902 F.2d 1429, 1432 (9th Cir. 1990); *United States v.* Kottwitz, 614 F.3d 1241, 1269 (11th Cir. 2010); *United States v. Clark*, 577 F.3d 273 (5th Cir. 2009); *United States v. Searan*, 259 F.3d 434, 443 (6th Cir. 2001) (citing *United States v. Sassak*, 881 F.2d 276, 278 (6th Cir. 1989)); 26 U.S.C. § 7206(2).

As such, if the defendant holds a good-faith belief that they are complying with the tax laws then a conviction may not stand. *See Cheek*, *supra*, 498 U.S. at 201 (holding that even an unreasonable but good-faith mistake negates willfulness); *United States v. Cohen*, 510 F.3d 1114, 1123-24 (9th Cir. 2008) (holding that trial court's exclusion of psychiatrist's testimony that defendant was incapable of willfulness was not harmless error because testimony could have established good-faith defense); *United States v. Ervasti*, 201 F.3d 1029, 1041 (8th Cir. 2000) ("A good faith belief that one's conduct does not violate tax laws negates the willfulness element of this offense."); *United States v. Salerno*, *supra*, 902 F.2d at 1432 (finding defendant not guilty on § 7206 charge because government could not provide any evidence that defendant specifically intended to

- 14 -

cause filing of false returns); *United States v. George*, *supra*, 420 F.3d at 999 ["Good faith reliance on a qualified tax accountant is a defense to willfulness."].

Therefore, to convict defendant Howard Hsu of aiding, assisting, procuring, counseling, or advising the preparation or presentation of a tax return which is fraudulent or false as to any material matter, in violation of Section 7206(2), the government must prove beyond a reasonable doubt that: (1) Howard Hsu aided, assisted, or otherwise caused the preparation and presentation of a return; (2) the return was fraudulent or false as to a material matter; (3) Howard Hsu knew that the return would be false; (4) Howard Hsu acted willfully; and (5) Howard Hsu did not hold a good faith belief that he was complying with the provisions of the Internal Revenue Code relating to his understanding of Didsee Corporation's federal tax liability, even if his belief is or was unreasonable.

### C. Preliminary Instructions

 The defense prefers no preliminary statement read to the jury pool. Regarding the final jury of twelve, the parties agree to have preliminary instructions read, as suggested by the Ninth Circuit Model Criminal Jury Instructions. Specifically, the parties request that instructions one through twelve of the instructions submitted to the Court on January 23, 2017, be read to the jury before opening statements.

### D. Opening Statements

The principal concerns for the defense would be appeals to class prejudice or racial prejudice, references to excluded or inadmissible evidence, or appeals to the jury's pecuniary self-interest in taxes. As the Ninth Circuit directed, "while prosecutors are not required to describe sinners as saints, they are required to establish the state of sin by admissible evidence unaided by aspersions that rest on inadmissible evidence, hunch or spite." *United States v. Sanchez*, 176 F.3d 1214, 1222 (9th Cir. 1999).

"As a general rule, a prosecutor may not express his opinion of the defendant's guilt or his belief in the credibility of government witnesses." *Sanchez*, *supra*, 176 F.3d at 1224.

A "persistent appeal to class prejudice" is so offensive to the due process clause that no prosecution can obtain a criminal conviction by such method. *See United States v. Stahl*, 616 F.2d 30, 33 (2nd Cir. 1980). As the Supreme Court long ago identified, "appeals to class prejudice are

highly improper and cannot be condoned and trial courts should ever be alert to prevent them." *United States v. Socony-Vaccum Oil Co.*, 310 U.S. 150, 239 (1940). Indeed, "appeals to class prejudice must not be tolerated in the courtroom." *Sizemore v. Fletcher*, 921 F.2d 667, 671 (6th Cir. 1990).

Equally, references to jurors as taxpayers or appealing to the pecuniary self-interest of the jurors is patently improper. "Remarks invoking the individual pecuniary interests of jurors as taxpayers are universally viewed as improper." *United States v. Palma*, 473 F.3d 899, 902 (8th Cir. 2007).

### E. Evidentiary Issues At Trial

#### *a.* Prosecution's Evidence of Deductions

The bulk of the prosecution's evidence concerns deductions taken on behalf of Didsee corporation. According to the indictment, these deductions were improper and were actually personal expenses for Howard Hsu or Tracy Chang. However, notably, neither Mr. Hsu nor Ms. Chang were ever afforded an opportunity to explain to the IRS why the deductions were actually proper or at least why they believed the deductions to in compliance with the Internal Revenue Code. In fact, this case never had a civil component to it whatsoever. Although neither defendant has any criminal record, the IRS immediately assumed, without conclusive evidence, that Mr. Hsu and Ms. Chang conspired to defraud the government by overstating Didsee corporation's deductions. This has no basis in reality, as will be concluded by means of this jury trial. Moreover, a civil setting would permit the defendants to freely explain each and every deduction, without a prison sentence haunting their every representation, and would have resolved this matter without any criminal component whatsoever.

Looking further back into the history of this case, it becomes evident why the IRS rushed for an indictment. Early on, IRS Special Agent Justin Fletcher expended significant government resources in an attempt to piece together a much larger, but nonexistent, Chinese money laundering conspiracy involving the defendants' family, including Mr. Hsu's brother and father in Taiwan. Ultimately, that investigation floundered. To avoid coming up empty handed, Special Agent Fletcher instead shifted his attention to Didsee corporation and the seemingly high deductions

claimed on the Form 1120 tax returns. Defense counsel believes the Special Agent's Report will elucidate this issue in more detail, and has repeatedly requested and filed motions to have that report disclosed. However, to date, the prosecution has not provided the Special Agent's Report. Once that is disclosed, it will become evident that this litigation is a waste of resources and compounds an already absurd expenditure based on a single special agent's fantasy.

### b. Reference by the Prosecution Defendant Tracy Chang as an Accountant

The defense expects the prosecution to refer to Ms. Chang as an accountant, as has been done throughout this case, such as in the March 18, 2011, search warrant application. However, both the government and the defense know that Ms. Chang is, in fact, not an accountant; Ms. Chang has continuously stated her position is in accounts payable, which is materially different than an accountant. The prosecution's sole evidence pertaining to this alleged title for Ms. Chang is a single bank application which records Ms. Chang's occupation as "accountant" at Golden Gate University, which the defense contends was filled out by a bank employee, not Ms. Chang herself. Thus, the prosecution should not be permitted to paint her as an accountant, which likely could influence the jury in their consideration of the evidence presented against Ms. Chang.

### c. Official Documents and Business Records

The prosecution includes in its exhibit list various documents filed with public agencies. Such documents are inadmissible hearsay unless the records were prepared by public officials pursuant to the duties of their offices. *See Olender v. United States*, 210 F.2d 795 (9th Cir. 1954). The same logic applies to business records: in order for the records to be admissible, the substance of the documents must be filled out by a business employee for business reason pursuant to regularly conducted business duties.

### d. Defendants' Subjective Good Faith Beliefs

There is nothing as fundamental to Americans' concept of a fair trial than the chance for the accused to explain their intentions and reference the objective evidence that supports their intentions. Due process secures these rights. *See Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045 (1973).

There are two issues of intent relevant to this case: first, whether the defendants intended to

- 17 -

defraud the government and fraudulently obstruct certain specified functions of the Internal Revenue Service; and second, whether the defendants acted willfully in all of the charges, which requires the government to prove the defendants did not have a good faith belief he or she was complying with the tax laws as he or she understood them.

Mere open defiance is not a criminal conspiracy to defraud. *See e.g., Hammerschmidt v. United States*, 265 U.S. 182, 184 (1924) (conspiracy to defraud requires an agreement to obstruct by deceit, craft, or trickery, and at least means that are dishonest). Deceit is a critical requirement. *United States v. Caldwell*, 989 F.2d 1056, 1058-1059 (1993). "Good faith, in general, constitutes a complete defense to any crime which requires fraudulent intent". *United States v. Faust*, 850 F.2d 575, 582 (9th Cir. 1988). The prosecution must prove a defendant did not have a good faith belief he was complying with the tax laws to find he acted willfully in violation of tax laws. *See Cheek v. United States*, 498 U.S. 192 (1991)

The Sixth Amendment further secures the right to the accused to present evidence on his behalf of his innocent intentions. *See* U.S. Const. amend. VI. On this issue in the context of willfulness for tax crimes, the Supreme Court was very clear: "forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision." *Cheek,* 498 U.S. at 195. What evidence was the Supreme Court referring to?

> The defendant has testified as to what he states are his interpretations of the United States Constitution, court opinions, common law and other materials he has reviewed. . . He has also introduced materials which contain references to quotations from the United States Constitution, court opinions, statutes, and other sources.

*Id.* at 196, n.5.

Defendants Howard Hsu or Tracy Chang may testify as to his or her beliefs and introduce the materials he or she reviewed and read, from court cases to instructions from a licensed tax professional, to explain his or her subjective belief. While such materials may be legal materials, they will be introduced into evidence for the sole and limited purpose of showing what the defendants relied upon in coming to their subjective conclusions about the legal obligations of Didsee corporation. These and other materials are admitted solely to show a lack of willfulness, not for the truth of the matter asserted, and as such do not run into any problem concerning hearsay. *See*

- 18 -

*United States v. Harris*, 942 F.2d 1125, 1131 (7th Cir. 1991) (error to exclude letters which explained why defendant thought moneys received were not taxed and defendant must be entitled to admit any evidence which is "objective" evidence they read in coming to their beliefs); *see also Cheek v. United States*, 498 U.S. 192 (1991).

> The rule in this Circuit clearly is:
> The Supreme Court in *Cheek* held that "forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision." *Cheek* 111 S.Ct. at 611. Although a district court may exclude evidence of what the law *is* or *should be*, it ordinarily cannot exclude evidence relevant to the jury's determination of what a defendant *thought the law was* in ß 7203 cases because willfulness is an element of the offense.  In ß 7203 prosecutions, statutes or case law upon which the defendant claims to have actually relied are admissible to disprove that element if the defendant lays a proper foundation which demonstrates such reliance.

*United States v. Powell*, 955 F.2d 1206, 1214 (1992) (emphasis in original).

Hence, *Cheek* and *Powell* require Defendant Howard Hsu or Tracy Chang be allowed to testify as to his or her beliefs about why their intent was not fraudulent, and why he or she did not act willfully, whether those beliefs were "alternative" beliefs or not, as well as any evidence relied upon. Additionally, the Ninth Circuit further authorized admitting certain statements and representations made by the government, such as government publications and government manuals. *See United States v. Van Griffin*, 874 F.2d 634, 638 (9th Cir. 1989) (government manuals admissible as party admissions under Fed.R.Evid. 801(d)(2)(D)).

The defendants' beliefs are on trial, not the law. As is, no jury is ever confused on this; they understand they are evaluating the defendants' beliefs, not whether they agree with the beliefs, and this is the whole point of the good faith defense to willfulness. The only juror problem on this issue can be that some jurors wish to convict regardless of a defendant's good faith, and many of these same jurors admit they would refuse a judge's good faith instruction on the issue.

Accordingly, any statements of this manner should be permitted and accepted into evidence for the jury's consideration.

## III.        DISPUTED LEGAL ISSUES

The principal legal issue in dispute is the prosecution's apparent assertion that *mens rea* is not a required element for a criminal tax offense. However, this assertion has no merit because     it

- 19 -

contradicts controlling Ninth Circuit and Supreme Court precedent. The Supreme Court and the Ninth Circuit have expressly recognized that criminal tax charges are crimes of specific intent, thus requiring knowledge and intent on the part of the defendant that their actions would result in an illegal act. *United States v. Salerno*, *supra*, 902 F.2d at 1432 (citing *United States v. Bishop*, *supra*, 412 U.S. at 361). It is not enough for the IRS to assert that a return was filed incorrectly, the defendants must have known of that impropriety at the time of filing the return to be convicted of a violation. *See United States v. Bishop*, 412 U.S. 346, 361 (1973); *United States v. Salerno*, 902 F.2d 1429, 1432 (9th Cir. 1990); *United States v. Kottwitz*, 614 F.3d 1241, 1269 (11th Cir. 2010); *United States v. Clark*, 577 F.3d 273 (5th Cir. 2009); *United States v. Searan*, 259 F.3d 434, 443 (6th Cir. 2001) (citing *United States v. Sassak*, 881 F.2d 276, 278 (6th Cir. 1989)); *United States v. Morris*, 20 F.3d 1111, 1115 (11th Cir. 1994) (citing 26 U.S.C. § 7206(1)); *see also* 26 U.S.C. § 7206(2). As such, "[g]ood faith, in general, constitutes a complete defense to any crime which requires fraudulent intent". *United States v. Faust*, 850 F.2d 575, 582 (9th Cir. 1988).

Similarly, the prosecution incorrectly relies on the Ninth Circuit Model Criminal Jury Instructions for the proposition that filing the return is not an element of a Section 7206(1) offense. *See* Ninth Circuit Model Criminal Jury Instructions 9.39 (2010). However, controlling Ninth Circuit precedent unambiguously states that, in the Ninth Circuit, "'filing' is an element of a conviction under § 7206(1)," and the Court also noted that it knows "of no Supreme Court case holding that 'filing' is *not* a required element under § 7206(1)." *United States v. Boitano*, *supra*, 796 F.3d at 1164. Moreover, the introduction to the Ninth Circuit Model Criminal Jury Instructions notes that:

> The instructions in this Manual are models. They are not mandatory, and must be reviewed carefully before use in a particular case. They are not a substitute for the individual research and drafting that may be required in a particular case, nor are they intended to discourage judges from using their own forms and techniques for instructing juries.

Ninth Circuit Model Criminal Jury Instructions, *Introduction to the 2010 Edition* (2010).

As such, the more recent Ninth Circuit precedent controls.

Because of this, it is notable that the indictment never alleges that defendant Tracy Chang ever "filed" a Form 1120 on behalf of Didsee corporation, despite clearly being an element

- 20 -

required for a Section 7206(1) violation.

**IV.       CONCLUSION**

Defendants Howard Hsu and Tracy Chang request nothing more, and nothing less, than a fair trial on the merits of the charges and the facts in actual dispute.

Respectfully submitted this 16th day of January 2017.

/s/ Robert E. Barnes
ROBERT E. BARNES
Attorney for Defendant
Howard Hsu

/s/ Joseph C. Longo
JOSEPH LONGO
Attorney for Defendant
Tracy Chang

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

   v.

TRACY CHANG and HOWARD HSU,

   Defendants.

Case No.: 3:15-cr-00067-WHO

CERTIFICATE OF SERVICE

   IT IS HEREBY CERTIFIED THAT:

   I, ROBERT E. BARNES, am a citizen of the United States and am at least 18 years of age. My business address is 601 South Figueroa Street, Suite 4050, Los Angeles, California 90017.

   I am not a party to the above titled action. I have caused service of this Defendants' Trial Brief on the following parties by filing with the court's electronic filing system (ECF):

   Asst. United States Attorney Colin Sampson;

   Asst. United States Attorney Matthew Kluge.

   I declare under penalty of perjury that the foregoing is true and correct. Executed on January 16, 2017.

/s/ Robert E. Barnes
Robert E. Barnes

Attorney for Defendant
Howard Hsu

- 1 -

Case No. 3:15-00067-WHO
Certification of Service